here again in person. It seems like COVID was a long, difficult time for all of us. Why don't we go ahead and just call the first case. We'll waive the calling of the calendar. The first case for argument is United States v. Alex Johnson. Ms. Roast, when you're ready. And before you get started, I do want to thank you for your willingness to serve on the CJA panel. Without your willingness to provide this service to the people of the United States, our system wouldn't work. So thank you very much. Thank you, Judge. I appreciate it. Good morning and may it please the Court, Counsel. My name is Ashley Roast and I represent the appellate in this matter, Mr. Alex Johnson. The primary issue before the Court today is whether Officer Stevens unreasonably prolonged a traffic stop to wait for a drug dog, resulting in an unlawful search and seizure in violation of the Fourth Amendment. The touchstone of any Fourth Amendment analysis in the lens that this Court should view this case through is the reasonableness of Officer Stevens during the pendency of the stop. The Supreme Court has made it clear that a traffic stop must not last any longer than is reasonably necessary to effectuate the mission of the stop and that the authority of the stop ends when all tasks tied to a traffic infraction should have or reasonably should have been completed. The Court has also made it clear that a drug sniff is not part of a traffic stop's mission, so a traffic stop cannot be prolonged for purposes of the same. Had Officer Stevens acted reasonably in effectuating the stop, the stop should have been concluded prior to the arrival of Officer Westrom and his canine officer and certainly before the actual drug dog sniff began. Let me ask you this. For me, this is the core of the case. It's a very hard case, but here's the core. You mentioned the word reasonable about five times, which we know is the standard, and I think it's highly significant here that the charge, that the citation was for driving without a license, and in particular, if he would have left Mr. Johnson there, there's a possibility he would have just recommitted the same offense, which is driving away the car without a license. Isn't that the exact safety rationale that community caretaking, that we recognize in that prior case? Sure, and I think the prior case you're referring to, Judge Strauss, is Soderman. Correct. And the community caretaking rationale would have been triggered had Officer Stevens given any indication at any point in the stop that he was actually concerned about Mr. Johnson driving off with the vehicle. But instead, Mr. Johnson, when asking Officer Stevens about 18 minutes into the traffic stop, should I plan to leave the Pontiac here, he said, nope. If you have a cell phone, great, and then stops, kind of changes his instruction and says, well, I'm actually just going to trust that when I leave, you're going to get this taken care of. Okay, that's the tricky part, and that's what I'm trying to figure out. That's his subjective intent, the officer's subjective intent. But I wonder, I put myself in a reasonable officer's shoes, and if I had somebody who just was driving without a license, right, and then I'm going to leave the scene, a reasonable officer under the circumstances likely would have stayed in order to make sure that he didn't drive the car away. Or at least that would have been reasonable. That would have been reasonable, and had Officer Stevens potentially given any indication that that's what he was going to do, I think we probably would have had a different case up on appeal. Why does it matter what Officer Stevens was going to do if we're talking about a reasonable officer? Because the lens that we view this case is based on the actions of the officer and only the actions of the officer. And if we look here, had Officer Stevens been acting reasonably, there are several instances throughout the traffic stop that he could have addressed the no license issue in a better or more diligent or reasonable, again, manner. Officer Gillespie arrives about 13 minutes into the traffic stop to get out and do the window tint of the car. Officer Stevens at that point could have said, hey, while I get out and worry about this, why don't you call somebody to deal with the car? So if he would have said nothing, everything is silent, and he just did the exact same thing without saying anything at all, probably a different case. Probably a reasonable to keep the car there so he didn't drive it away. Probably a different case. But that's not what he did. And so that's the crux of I think where we're at. I'm not sure you're right about that, though, because like I said, we see it. You're right. We see it through their eyes. But his eyes is through a reasonable officer. It's not based on what he says. It's based on what he does. And so I'm just not positive that you necessarily, that the words he stated necessarily vitiate what a reasonable officer would have done under their circumstance. That's what I'm struggling with because the Supreme Court repeatedly says it's objective. Sure. But if we also take what he says versus also what he does and you add them together, it sort of compounds the fact that he wasn't acting reasonably. And the reason I say that is because not only does he say I'm going to trust that you get this taken care of, but then if we look at the timeline of the stop and what actually happens, he sat there and talked about COVID and babysitters and how he hated working at a bank for two minutes. He could have been addressing the no license or traffic stop then. But isn't that consistent with waiting, you know, because he didn't want him to drive it away? I mean, that's the problem I'm having is some of the things he did is consistent with trying to stall him so that he doesn't drive the car away because he has no license. But if we also look at the community caretaking function in Soderman in particular with what the district court, and I think what you're kind of referring to is that you can wait for something that happens to make sure that somebody without a license doesn't drive away. I think unquestionably you can do that. Sure. Yes, I agree. But in Soderman, in Soderman the whole focus of the officer's intention at that point was the community caretaking function. And when this court affirmed that traffic stop, they said, the reason we are affirming it is because the sole function was directly related to the community caretaking function. It was not related to this other investigation into the drugs. Here, the sole focus of Officer Stevens' actions was related to the investigation of the drugs. And at the evidentiary hearing when I was questioning Officer Stevens, I asked him at one point, I said, what are you waiting for when you're doing all of these things that are unrelated to the traffic stop? And he said, I'm waiting for Officer Westrom to come with his canine. He didn't say, I'm waiting for the drug dog. He didn't say, I'm waiting for, or he did say, I'm waiting for the drug dog. He didn't say, I'm waiting for a licensed driver or a tow truck or any of these other things that would at that point have meant he was operating under the community caretaking function. As we go about the business of looking at this through the lens as you've described, does it matter that the district court specifically found that Officer Stevens' actions were clearly meant to prolong the stop in order for Officer Westrom and the canine, Robbie, to arrive on the scene to sniff the Pontiac? Does that matter? Well, we certainly like that finding by the district court. It is a de novo review. So, I mean, how the court ultimately replies the facts to the law, I don't think this court necessarily has to take into consideration. Do you think that de novo review means that we just freely ignore whatever the district court finds? I mean, aren't they still somebody that actually saw the witnesses, heard the testimony, and make credibility determinations?  And it's actually not a straight de novo. It's actually more of a mixed question because you have to look at the facts and then how they applied the law. Well, that's a fact finding. Right. I mean, and the real question is that's this whole objective subjective. What are we looking at? You know, can we consider that? I mean, the whole crutch of the case is what he said. I mean, because in the absence of the officer saying, you know, I'm going to let you take care of it, but, man, if you drive away, we're going to get you. We'll tow your car. All sorts of horrible things are going to happen to you. And, oh, by the way, I guess we won't tow your car because it's insured. You know, he goes through that whole thing. But, really, this whole case is like what the officer said. And the question is when we're really looking at it as the reasonableness of what the officer is doing, why do we really care about what the officer says? Well, I think the officer, what we care about the officer says is that, and we have to kind of get down to sort of the brass tacks of it, because this is a Fourth Amendment, that we don't want anybody unreasonably detained or any searches happening without sort of the legality of it being upheld. And it doesn't just come down to what Officer Stevens says. It comes down to the actions and everything else that goes with it. And as far as the district court finding that he should have been concluded, we agree with that, obviously, 100%. And where the district court's rub was, it didn't have, and where it basically debated its finding was it didn't have any authority that said that an officer has to let a driver know that he has to call somebody. And so because of that, that they can continue to detain him, that's where we think the error happened, because the authority is the reasonableness and the diligence. Yeah, I agree with you. I think that part of it was erroneous by the district court. I don't think that issue even matters, to be honest with you. It's the issue that Judge Erickson identified. But I want to follow up with one point, which is this, to me, we're in a really hard area. This is a very tough case. But it wouldn't be tough, I think, if we went straight to inevitable discovery, because you would agree, wouldn't you, that he could not drive the car away. That would have been illegal. We can't presume he would have driven the car away. Correct. And I think that had inevitable discovery been brought up at any point in time, we would be in a very different sort of corner of the legal world here, but that wasn't the case. And had they even let him go, that would have perhaps dealt with the seizure part of the Fourth Amendment issue, but the car would have had to have remained and maybe we would have gotten there had the drug dog showed up while the car was still sitting there. But, again, none of those things actually happened, and that's why we are where we are. I agree. I'm just struggling because the theory I just laid out on the reasonableness of what the officer did, keeping the car, is directly related to inevitable discovery. They're like flip sides of the same coin, and I get it. The government has to bring up inevitable discovery, but I'm trying to figure out how we'd separate all these different issues. It's very difficult. And I don't envy the court in that, Your Honor. And I think where we land, again, and I don't want to keep repeating myself, but we have to look at what Officer Stevens actually did here. He had about six minutes, actually probably more than six minutes prior to the arrival of the drug dog where he could have addressed the community care taking function. He didn't. And instead, at 17 minutes into the stop, you see him print the tickets. He places them really about as far away from Mr. Johnson's reach as he can get, and then sits there and talks about completely unrelated things, which have nothing to do with the traffic stop, all of which he could have been addressing the community care taking function. Was the record show that he printed both citations and put those up? It was just one at that point, Your Honor. It was actually the no license ticket that he printed and then set aside. He got back in the car, and I think this is where the actions really speak, even just as loud as the words. If you look at the traffic stop video, because it's all in dash cam video, you see Officer Westrom come. As soon as you see Officer Westrom come, he prints the videos. Then he gets out. He talks to Officer Westrom about the K-9. As soon as the K-9 sniff starts, then he starts discussing the videos. Within 30 seconds of watching the dog alerts, then he hands over the tickets. It's so methodically and it lines up so closely with that drug dog sniff that that's the problem. Not only do we have him saying, you don't have to call somebody, and then in testimony him saying, I'm waiting for the drug dog. He could have even used Officer Gillespie, and he said, I didn't need to use him because I was waiting for a different tool. I said, by tool, are you talking about the drug dog? Yep, I'm talking about the drug dog. Officer Stevens said his words and his actions, I don't care about the no license ticket. I'm going to trust that you get it taken care of. His primary purpose in the whole stop, based on his actions, his admissions, was that he wanted that drug dog, and that's what violates the Fourth Amendment. Had he done a number of other things, we would have maybe had a reasonable stop or another stop that would not have violated the Fourth Amendment, but he didn't do any of those things, and so that's the problem that we have, and that's why we're here today. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal. You may. Thank you. Ms. Warner? Good morning, and may it please the court, counsel. I'm Alexis Warner, assistant United States attorney, presenting here on behalf of the government. I'm here today to request that this court affirm the district court's order denying Mr. Johnson's motion to suppress. Your Honors, here additional complications arose, and I'll give a full recitation of what the Johnson, or what the Rodriguez standard is. The tolerable duration of the police inquiries were to address is determined by addressing both the traffic stop that warranted, the traffic violation that warranted the stop, and attend to related safety concerns. It was these related safety concerns that reasonably extended the scope of the stop here and required. Counsel, what are those safety concerns? Because when you look in the record, it's hard to find evidence in the record and the testimony of any safety concerns. So the safety concerns were the suspended license, and then the fallout from the suspended license, which are what to do with the vehicle that's there on the scene, because Mr. Johnson himself was unable to drive the vehicle away. But this was on a side street, wasn't it? This was not like Solerman, where I think that was on the interstate. And in the end here, the car was left on the road with the ignition key in it. Certainly, yes. That is the case. The safety concern was what? That the defendant here would drive it, I take it, is the only one that I can kind of see. And the officer here stated he wasn't worried about that. So, and again, we have the objective, subjective struggle here. But when I look at the transcript, when I look at the record in this case, I don't see evidence of safety concerns. I see a desire to get the dog out to the car as soon as possible. Sure. I mean, I'm not going to say that there's not testimony in the record that Officer Stevens said he was waiting for the drug dog to get there. However, he qualified that statement during testimony with also saying he was completing the warning tickets. But his safety concerns are completely divorced from whatever else is in the record, if you think about it, right? I mean, he could have arrested him for driving under suspension. Instead, he decides to cite him with an infraction, driving without a license. He cites him with or gives him a warning for the excessive tinting on the car. He takes 20 minutes to figure out how to get together to get these two tickets together, right? And all the while, he's engaging in all sorts of conversation that is completely and totally, utterly unrelated to any safety concern. He never expresses a safety concern. In fact, he specifically disavows a safety concern. And then he drives away, or then he leaves the car, parked on the side street, on the road with the keys in the ignition. That doesn't look like a guy who's got one iota of concern for any safety of anybody, the car, the public. I mean, he was more concerned about the pit bull than he was anything else when it came right down to it. That's the only time anybody looked like they were concerned about safety at all, and they had to go get Grandpa to go get the dog. Sure, and I guess I would submit that the safety concerns are the suspended license, we don't want drivers on the road that shouldn't be on the road, and then the car being there. And I think Judge Strauss indicated to this, you know, the car was there, and it wasn't going anywhere. I think that's another point that I'd like to draw the Court's attention to here. Mr. Johnson here was physically unable to remove the vehicle from, you know, the side of the road. At various points throughout their interaction, Officer Stevens says to him, you know, do you have somebody that you can call? Up until, I think, the 36-minute mark, Mr. Johnson never makes a phone call. He was not prohibited from making a phone call. So why not argue inevitable discovery? That just seems to me to be an absolute slam dunk, which is the car's not going anywhere, you can have somebody come and sniff it, because it's going to be sitting there for the next hour until Grandpa comes and gets it. Right. And I think that the Court could find on inevitable discovery doctrine here. I mean, it wasn't... Waived that argument, though? I don't think it was briefed out, you know, in the district court level. I don't think it was briefed but waived. Unless I missed it, and that wouldn't be the first time I missed an argument. But I mean, I had the same reaction as Judge Strauss. When you're looking at this case, that seems like the government's easiest way out, but I didn't read it in any of the papers. Sure. And I appreciate that. I think in the Soderman, we cited Soderman where it says, it justifiably extended the lawful scope of the traffic stop because of defendant's inability to remove the vehicle from the scene. So I think it's inherent in that argument, although not specifically fleshed out in the briefing. But in this case, because we had the suspended license, he could not remove the vehicle from the scene. I think we also have... I mean, even though it's not Soderman where it's on a highway, I think we also have a safety concern. You know, a car just can't be left on the side of the road. Honestly, I don't buy it. I was on Soderman. I don't buy the safety concern with the car. It was on a side street, and if you look at the pictures, actually there were cars parked that were left there. Cars parked exactly the same way. It wasn't near a fire hydrant or anything like that. But I do get the suspended license actually is very serious. So what I'm trying to figure out is what do we do with a cop who is very candid? I mean, this is a very candid cop. He's saying, I'm not concerned about this. I don't care about this. Everything that Judge Erickson said is absolutely 100 percent right. But perhaps a cop who has different... who is a reasonable cop, him or herself, who has different viewpoints about what's important might say, God, this car, I don't want you driving this car. You have a suspended license. There's a reason why you have a suspended license. And so what do we do? And I don't want to call him a dumb cop because he's not a dumb cop. But what do we do with a cop who says dumb things, right, that sort of lead to potentially vitiating the search versus what a reasonable cop might have done under the circumstances? That's the struggle I'm having. Yeah, and I think you addressed that with Ms. Frost. I mean, it doesn't necessarily matter what he says. It's what he does. And I think the standard, of course, is reasonableness here. And that's the standard for it all. And I think appellant would like the court to view this as just a very regimented, simple transaction. And that's not what the case law indicates. That's not what happens here. Obviously, the court has the luxury of seeing the dash cam video, hearing the audio, and seeing the transactions. And officers aren't boxed in into some type of fixed formula. We go the reasonableness of what the officer did and no per se timeline. And in this case, there were two things that Officer Stevens had to address. He had to address the window tint and he had to address the suspended license, both of which had their own individual things to go through, had an individual form that he had to complete for the ticketing process. But the problem is he wasn't working on those. He was, I mean, the suspended license came up, I think, at six minutes into the video. At least the warrant search came back. And I think the defendant here admitted he had a suspended license almost immediately. And yet, following that moment, if I remember, there was talk about COVID, about jobs, about this and that. And what's reasonable about sitting there not pursuing the ticket? Sure. And I think in that timeframe that you're speaking of, they're waiting there for the tint meter to get there. But he already decided he was going to issue a citation for the license, right? He did, yes. And he's not working on it. Correct. I mean, I think there's some testimony in the suppression hearing transcript  but he was also trying to complete the citation. And during that timeframe, I mean, Mr. Johnson's asking about the ticket, also asking about the percentage of tint. He's asking about the vehicle. So I mean, I think the court should just always go back to the reasonableness of the officer's conduct here. And I think, Judge Erickson, you had addressed the district court's opinion, talked about he could have completed this more diligently. And I just want to note that the district court said that he should have had all tasks tied to investigating the window tint violation. But then they go on to qualify that to say, but he had to address the suspended license issue. Let me follow up on that, which is on the suspended license issue, he's saying, look, I was seized and I shouldn't have been seized for this long. Why didn't the officer just let him go but stay with the car, right? So one way to deal with the safety issue is by saying, you, my friend, are free to go. You might want to call somebody. You might want to call Grandpa or whoever to come get the car. But you're free to go, and that takes care of the safety issue. He could have stayed with the car and had the drug sniff and not had to seize Mr. Johnson. Correct. And I think he did say, you know, you should call somebody to the scene. Mr. Johnson never called anybody to the scene there. And I mean, I still think that the court could decide this on the vehicle was not going anywhere. But he didn't let him go. See, that's the struggle we're all having. He didn't let him go. And maybe it doesn't matter because that's a Section 1983 issue, right, the length of the seizure. Maybe that's a different issue. Maybe it has no causal connection to the illegal search. But I think it's significant that he kept him there the whole time. Sure, sure. And I think the way that the conversation was going, I mean, I think then the court can view that and kind of see how the conversation was going there. The other thing, and although it's, you know, not directly fleshed out in the brief, but during the conversation in the vehicle when they were waiting for the window tint, Mr. Johnson also gives consent to search the interior cab of the vehicle. And although Officer Stevens does not search the interior of the cab, I would put forth to this Court that that was a consensual encounter. So theoretically he could have went and searched the vehicle right when he got the consent to search, which would have lawfully extended it, you know, even more based on the consensual encounter. And I think we find that there's some language of paralysis on that. And also this case, this Court's case in U.S. v. Engelhardt also talks about the continued consensual encounter because he could have at 13 and a half minutes, he gets the consent. He could have went and searched the interior cab and then come back to the car and completed the rest of the six minutes. That's true. But if we decided on that ground, wouldn't we have to send it back down to the district court for more findings? So we don't know how long the search would have lasted and whether that would have unreasonable, you know, that would have taken away the taint of the unreasonable extension of the search. True. There is no testimony in the record about that. But I think that, you know, we have that there and that it would have, you know, I think an argument is made that this officer actually more efficiently concluded the stop because he could have done that search, too, and that was a consensual encounter between him and Mr. Johnson. I see I have a few more minutes on my timer, and I would be happy to answer any more questions, but I don't know if there's anything more I need to add here. I don't see any additional questions, so thank you very much for your time here. Thank you. Ms. Brost, when you're ready. Thank you, Your Honor. Just a couple of things to just readdress on rebuttal. First of all, I think inevitable discovery was waived. I don't think that that can be fleshed out in Soderman, so just pointing that out there. As far as the consent issue, yes, Mr. Johnson gave consent to search the main cab, but when you review the testimony of Officer Stevens, particularly on page 95 of the transcript, he says that no search was conducted based on consent. So I think that kind of throws out any sort of time that would have allowed Officer Stevens to then keep Mr. Johnson if he wasn't even operating under consent at all. Lastly, the government keeps saying that Mr. Johnson could have made some arrangements for the vehicle at some point in the traffic stop. He did nothing. The actions are all based on Officer Stevens, not Mr. Johnson. Officer Stevens could have at any point in time dealt with the no license issue in a manner of different ways. He could have told him during the two minutes while they were waiting for the window tint meter that he needed to call somebody. Had he told him at that point, based on how long it took Grandpa to arrive, Grandpa would have been there to get the vehicle prior to the arrival of the drug dog. He could have dealt with the safety concerns, I say safety concerns loosely, and the no license issue still would have happened before the drug dog arrived. Do we know that, though? I mean, the one thing that concerns me is we don't know what Grandpa was doing at the time. We can't presume that he would have been there in the same amount of time he was there later. So I get it that there's at least, it raises some doubt. I don't know that we can say that, though. And that's fine. I mean, you don't necessarily have to make an actual factual finding. But you do know that Mom and Dad live very close by. So he could have at least let him go, which is what happened in Soderman. And that's why I think we have a very different case. Because Officer Stevens never addressed the community caretaking function, I don't think this case actually falls under Soderman. I think it falls under Perales. Because in Perales, there wasn't a community caretaking function, which we would still argue doesn't exist here. And the officer intermixed interdiction stuff with the traffic stop to get to the drug dog. And this court found that it was unreasonably prolonged. And so I think that's where the analysis needs to lie, is with Perales instead of Soderman. And for those reasons, we'd ask this court to reverse the lower court and grant Mr. Johnson's motion to suppress. Thank you very much. Thank you. The case is submitted. I want to thank each of you for your briefs and your arguments. They've been very helpful. This is an interesting and knotty case, one that. . .